736 So.2d 1167 (1999)
H & F LAND, INC., Petitioner,
v.
PANAMA CITY-BAY COUNTY AIRPORT AND INDUSTRIAL DISTRICT, Respondent.
No. 92,299.
Supreme Court of Florida.
June 10, 1999.
*1169 Rowlett W. Bryant and Cecilia Redding Boyd of Bryant & Higby, Chartered, Panama City, Florida, and Thomas Sale, Jr., Panama City, Florida, for Petitioner.
Richard Smoak, Panama City, Florida, for Respondent.
ANSTEAD, J.
We have for review a decision on the following question certified to be of great public importance:
DOES THE MARKETABLE RECORD TITLE ACT, CHAPTER 712, FLORIDA STATUTES, OPERATE TO EXTINGUISH AN OTHERWISE VALID CLAIM OF A COMMON LAW WAY OF NECESSITY WHEN SUCH CLAIM WAS NOT ASSERTED WITHIN THIRTY YEARS?
H & F Land, Inc. v. Panama City-Bay County Airport, Indus. Dist., 706 So.2d 327, 328 (Fla. 1st DCA 1998). We have *1170 jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we answer the certified question in the affirmative and hold that statutory or common law ways of necessity are subject to the provisions of the Marketable Record Title to Real Property Act ("MRTA").

FACTS AND PROCEEDINGS TO DATE
Coastal Lands Inc. ("Coastal") once owned all of the land now owned by the parties in this case. On October 4, 1940, Coastal conveyed 390 acres of land it owned to Bay County, which in turn conveyed this acreage to the Panama City Airport Board on July 23, 1947. This land is now owned by respondent, Panama City-Bay County Airport and Industrial District, with the Panama City-Bay County International Airport currently operating on it. As a result of the 1940 transfer, a small piece of land retained by Coastal became both water- and landlocked. This small parcel of land, approximately eight-tenths of an acre, is located on a peninsula that abuts the Airport District's property. The parties agree that an implied common law way of necessity from this small parcel and over the Airport District's property was created as a result of the 1940 transaction between Coastal and Bay County. However, no notice of a claim to such a way of necessity was ever filed in the public records or asserted by use.
This small parcel was conveyed by Coastal to O.E. Hobbs on June 15, 1943, along with the remainder of the land originally retained by Coastal when it sold part of its property to Bay County. H & F Land, Inc. ("H & F") acquired this small parcel in 1992.[1]
In 1996, some fifty-six years after any way of necessity would have been created, H & F filed a lawsuit and asserted for the first time that along with its acquisition of the small parcel, it also acquired a right to a way of necessity across the Airport District's land. In turn, Panama City filed a motion for summary judgment in that action, asserting that by operation of law, specifically Chapter 712, Florida Statutes (1993), MRTA, the way of necessity claimed by H & F had long been extinguished because the owners of the easement had failed to publicly assert a claim thereto. The trial court agreed and granted the motion. On appeal, the First District affirmed the grant of summary judgment, but certified the question set out above.

ANALYSIS
As noted above, the parties are in agreement that H & F and its predecessors in title were at one time entitled to a way of necessity by reason of the 1940 transaction, which left the small parcel now owned by H & F water- and landlocked. At issue today is the effect of MRTA on this way of necessity, now codified under the provisions of section 704.01(1), Florida Statutes (1995).[2] While numerous other states have adopted acts similar to MRTA, no other case has specifically addressed this issue.[3] *1171 To analyze the issue, we must address two questions. First, whether a claim under a common law way of necessity is an interest in land subject to MRTA? And, second, if so, are there any exceptions in MRTA that apply to preserve the way of necessity despite the failure to assert a claim to this right within the time limitations provided in MRTA?

BACKGROUND OF MRTA AND SECTION 704.01
In landmark legislation fundamentally revamping Florida property law, the Florida Legislature adopted MRTA in 1963 for the purpose of simplifying and facilitating land title transactions. See § 712.10, Fla. Stat. (1995). MRTA was designed to simplify conveyances of real property, stabilize titles, and give certainty to land ownership. See City of Miami v. St. Joe Paper Co., 364 So.2d 439, 444 (Fla. 1978).
MRTA is based on the Model Marketable Title Act, which was proposed in 1960 with multiple objectives: (1) to limit title searches to recently recorded instruments only; (2) to clear old defects of record; (3) to establish perimeters within which marketability can be determined; (4) to reduce the number of quiet title actions; and (5) to reduce the costs of abstracts and closings. See Lori Tofflemire Moorhouse, Note, Marketable Record Title Act and Recording Act: Is Harmonic Coexistence Possible?, 29 U.Fla.L.Rev. 916, 923-24 (1977). In its essence, the Model Act sought to accomplish these objectives by providing that when a person has a record title to land for a designated duration, claims and interests in the property that stem from transactions before that period are extinguished unless the claimant seasonably records a notice to preserve his interest. See id. at 924. In much the same manner as the Model Act, MRTA's provisions contain a scheme to accomplish the same objective of stabilizing property law by clearing old defects from land titles, limiting the period of record search, and clearly defining marketability by extinguishing old interests of record not specifically claimed or reserved.
Section 712.02 of MRTA expressly provides that any person vested with any estate in land of record for thirty years or more shall have a marketable record title free and clear of all claims of an interest in land except those preserved by section 712.03:
Any person having the legal capacity to own land in this state, who, alone or together with his predecessors in title, has been vested with any estate in land of record for 30 years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in § 712.03.
§ 712.02, Fla. Stat. (1995) (emphasis added). In construing this provision in Marshall v. Hollywood, Inc., 236 So.2d 114 (Fla.1970), this Court stated: "By the Marketable Record Title Act, any claim or interest, vested or contingent, present or future, is cut off unless the claimant preserves his claim by filing a notice within a 30-year period. If a notice is not filed, the claim is lost." Id. at 119 (quoting Catsman, The Marketable Record Title Act and Uniform Title Standards, § 6.2, in III Florida Real Property Practice (1965) (citation omitted)) (emphasis added). We must determine whether a claim to a common law way of necessity falls within the "all claims" language used in the statute and as interpreted expansively in Marshall.

WAY OF NECESSITY
A way of necessity is an easement that arises from an implied grant or implied reservation of an interest in land. See Dinkins v. Julian, 122 So.2d 620 (Fla. 2d DCA 1960). It is based upon the principle and assumption that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property, but retains whatever is necessary *1172 for the beneficial use of the land he still holds. See Walkup v. Becker, 161 So.2d 893 (Fla. 1st DCA 1964). In Roy v. Euro-Holland Vastgoed, B.V., 404 So.2d 410 (Fla. 4th DCA 1981), the Fourth District cogently explained:
A way of necessity results from the application of the presumption that whenever a party conveys property he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. Such a way is of common-law origin, and is presumed to have been intended by the parties. A way of necessity is also said to be supported by the rule of public policy that lands should not be rendered unfit for occupancy or successful cultivation.
Id. at 412 (quoting 25 Am Jur.2d, Easements and Licenses § 34, at 447-48). It is also important to note that an easement is more than a mere personal privilege; it is an interest in land. See Winthrop v. Wadsworth, 42 So.2d 541 (Fla.1949). Hence, it is an interest in the Airport District's land that H & F seeks to have recognized and enforced in these legal proceedings.

EFFECT OF MRTA
Based upon the unambiguous language in MRTA referring to "all claims" and the clear policy underlying MRTA, both of which clearly mandate that "any claim or interest" in property be publicly asserted and recorded, we find that MRTA indeed encompasses all claims to an interest in property, including ways of necessity, unless such claims are expressly excepted from MRTA's provisions. In fact, Florida appellate courts have consistently applied MRTA to easements and rights of way in situations similar to the one involved herein. See, e.g., City of Jacksonville v. Horn, 496 So.2d 204 (Fla. 1st DCA 1986) (MRTA used to extinguish unrecorded public right of way that had never been used); Holland v. Hattaway, 438 So.2d 456 (Fla. 5th DCA 1983) (easement for access to a parcel of land is an estate in land and MRTA could be used to determine its marketability).
Importantly, this Court has upheld the extinguishment of interests in land under MRTA even where those interests were more clearly established and defined than those in question here. In Marshall, we held that MRTA operates to confer marketability to a recorded chain of title in land, even if the chain originates from a forged or a wild deed, so long as the strict recording requirements of MRTA are met. See 236 So.2d at 120. As a result, we concluded that a root of title based upon a forged deed would prevail even over an otherwise entirely valid deed recorded earlier in the chain of title. Id. In so holding, we refused to create an exception to MRTA and its clear policy favoring recording, even for legitimate interests in real property that had been lost only by reason of the existence of a recorded, but otherwise ordinarily invalid transfer. This holding, of course, was predicated upon the clear policy announced in MRTA favoring the recordation of instruments while also providing a generous time period for the assertion of any claims of an interest in land.
Having refused to look behind the recorded wild deed in Marshall to establish that it was based on a forgery or was otherwise invalid, it would make little sense for us to go behind the legitimate deed of the Airport District in this case to discover an unclaimed easement against the Airport District's property and except it from MRTA's recording requirements. A core concern of MRTA was that there be no "hidden" interests in property that could be asserted without limitation against a record property owner. In other words, MRTA shifted the burden to those claiming "any claim or interest" in property to come forward in a timely fashion and assert that interest publicly. Creating judicial exceptions to this comprehensive legislative scheme would undermine the core *1173 purpose of MRTA of providing stability to property law by requiring that all claims to an interest in property be recorded. As in Marshall, our conclusion today is predicated upon the unambiguous provisions of MRTA as well as the fundamental policy concerns underlying its enactment.

EXCEPTIONS
Having concluded that MRTA does apply to the asserted way of necessity, we must next consider the exceptions provided in section 712.03 of MRTA, only the first two of which merit discussion.[4]
The first exception preserves "[e]states or interests, easements and use restrictions disclosed by and defects inherent in the muniments of title[5] on which an estate is based beginning with the root of title." § 712.03(1), Fla. Stat. (1995). This exception has been narrowly construed. See, e.g. ITT Rayonier, Inc. v. Wadsworth, 346 So.2d 1004 (Fla.1977). In addition, the portion dealing with "defects inherent in the muniments of title" has been strictly limited to the "face of the instrument" instead of to an examination of the circumstances surrounding the deed. Id.
Initially, we note that the term "root of title" refers to the last title transaction creating the estate in question and which was recorded at least thirty years ago.[6]See § 712.01(2), Fla. Stat. (1995). In this case, the root of title is the 1947 conveyance from Bay County to the Panama City Airport Board. For this exception to apply in the instant case, the 1947 deed from Bay County to the Panama City Airport Board would have had to disclose on its face the common law way of necessity, or the common law way of necessity would have had to constitute a defect in that title, which was reflected on the face of the title instrument. See ITT Rayonier, Inc.
In the instant case, the 1947 transfer to Panama City never mentioned or referenced the common law way of necessity; therefore, it was not "disclosed by" the muniments of title as provided for in section 712.03(1). Indeed, we acknowledge that no deed would ordinarily reflect the way of necessity because by its very nature, a common law way of necessity is implied from the circumstances surrounding its creation. If such an easement was expressly provided for, there would be no common law way of necessity created.[7]
Further, we conclude that the common law way of necessity does not qualify as a defect inherent in the title because it constitutes a recognized legal interest in land and not a defect in title as this Court has interpreted that term. In ITT Rayonier, Inc., this Court dealt specifically with this exception in answering a series of certified questions from the United States Court of Appeals. In that case, Mr. Wadsworth, the owner of homestead property, died in 1935 survived by his widow and four children, and under the prevailing homestead statute, Mrs. Wadsworth was entitled to a life estate in the property and the children a vested remainder. However, in 1937, Mrs. Wadsworth executed a deed conveying the property to herself and her son Lewis Wadsworth, and *1174 in 1942 they in turn conveyed the property to ITT. ITT later claimed a marketable record title free of the other children's vested remainder interests, because the children's interests arose prior to the 1937 conveyance and root of title of ITT.
The children contended their interests were preserved under the exception of section 712.03(1) because the 1937 deed was inherently defective in that it purported to convey their remainder interests without their assent and also improperly conveyed property from Mrs. Wadsworth to herself. In rejecting both contentions, this Court disagreed with the children's broad interpretation of section 712.03(1) and held "[s]ince there is nothing on the face of the deed, in its make up or construction, to indicate that it conveys the children's remainder interest, those interests are not saved from extinguishment by subsection (1) of Section 712.03, Florida Statutes." 346 So.2d at 1011. The Court also explained that "[t]he terms `defects inherent in the muniments of title' do not refer to defects or failures in the transmission of title, as the plaintiffs argument suggests, but refer to defects in the make up or constitution of the deed or other muniments of title on which such transmission depends." Id. (quoting Marshall v. Hollywood, Inc., 224 So.2d 743, 751 (Fla. 4th DCA 1969), approved, 236 So.2d 120 (Fla.1970)).[8] Similarly, we conclude there has been no showing here of any "defects in the make up or constitution of the deed or other muniments of title" by which the Panama City Airport Board acquired its property. The deed was in regular form and simply conveyed the title to the property that the County intended to convey and the Panama City Airport Board intended to receive. Hence, we conclude that the exception under section 712.03(1) does not apply to a common law way of necessity.

FILING OF NOTICE
As for the second exception, the statute preserves estates, interests, claims or charges filed with a proper notice in accordance with the provisions of MRTA. See § 712.03(2), Fla. Stat. (1995). In this regard, section 712.05 of MRTA specifically provides:
Any person claiming an interest in land may preserve and protect the same from extinguishment by the operation of this act by filing for record, during the 30-year period immediately following the effective date of the root of title, a notice, in writing, in accordance with the provisions hereof, which notice shall have the effect of so preserving such claim of right for a period of not longer than 30 years after filing the same unless again filed as required herein.
§ 712.05, Fla. Stat. (1995). In City of Miami v. St. Joe Paper Co., 364 So.2d 439, 442 (Fla.1978), the court explained this provision:
The Marketable Record Title Act is also a recording act in that it provides for a simple and easy method by which the owner of an existing old interest may preserve it. If he fails to take the step of filing the notice as provided, he has only himself to blame if his interest is extinguished. The legislature did not intend to arbitrarily wipe out old claims and interests without affording a means of preserving them and giving a reasonable period of time within which to take the necessary steps to accomplish that purpose.
Similarly, in Cunningham v. Haley, 501 So.2d 649, 652-53 (Fla. 5th DCA 1986), the court explained:
It is the intent of sections 712.02(1) and 712.03(1), that easements and use restrictions and other estates, interests, and claims created prior to the root of *1175 title be extinguished by section 712.03(1), Florida Statutes, unless those matters are filed under section 712.05(1) or unless, as provided in section 712.03(1), after the date of the root of title, some muniment of title refers specifically... to a recorded title transaction which imposed, transferred, or continued such easement, use restrictions, estate, interest, or claim.
In other words, "[a] claimant will not be cut off if he has been a party to any title transaction recorded within a period of not less than thirty years or if he files a simple notice prescribed by the Act during the time allowed for this purpose." Wilson v. Kelley, 226 So.2d 123, 127 (Fla. 2d DCA 1969). We conclude that this exception does apply, but H & F has not demonstrated compliance with its conditions.
H & F contends it could not and should not have had to file a claim under section 712.05 or otherwise as to the common law way of necessity because such right was already created in a prior transaction. Again, we disagree. We conclude that section 712.05 clearly mandates and H & F's predecessors had the opportunity to record their claim to an easement, i.e., to a common law way of necessity across the Airport District's property. In fact, it would appear that the very nature of the property right claimed here, one inferred by the law but otherwise hidden to the public, would make it especially important under MRTA's scheme to have it recorded. H & F also contends that it is difficult and impracticable to file a notice of a common law way of necessity because of the uncertainty in determining its location, especially when a servient estate is subdivided. However, it is apparent that H & F's predecessors had access to all the information that must be contained in a recorded notice as required by section 702.06. As such, they could and should have properly filed the notice.[9] Since they failed to do so, H & F cannot avail itself of this exception.
H & F further asserts that a common law way of necessity should not be subject to any recording requirement, including that of MRTA, because such an interest in land is not subject to the recording requirements of section 695.01, Florida Statutes (1995), Florida's general recording statute.[10] However, section 712.07 provides that courts should construe MRTA independent of any other recording act. It provides:
Nothing contained in this law shall be construed to extend the period for the bringing of an action or for the doing of any other act required under any statute of limitations or to affect the operation of any statute governing the effect of the recording or the failure to record any instrument affecting land.
§ 712.07, Fla. Stat. (1995). We conclude that MRTA's broad recording provision is *1176 not limited to interests subject to section 695.01 and does include the easement claimed here.

LIMITATIONS EFFECT
As a final point, we recognize that MRTA also functions much as "a statute of limitations in that it requires stale demands to be asserted within a reasonable time after a cause of action has accrued. It prescribes a period within which a right may be enforced." St. Joe Paper Co., 364 So.2d at 442. Although MRTA can produce harsh results, in upholding its constitutionality, this Court has declared: "We are committed to the rule that statutes of this nature [statute of limitations] are good where a reasonable time is allowed to prosecute an asserted right." Id. at 443 (quoting Buck v. Triplett, 159 Fla. 772, 774, 32 So.2d 753, 754 (1947)). "The law is well settled by decisions of the Supreme Court of the United States, and in other jurisdictions, that statutes of limitation affecting existing rights are not unconstitutional if a reasonable time is given for the enforcement of the right before the bar takes effect." Campbell v. Horne, 147 Fla. 523, 526, 3 So.2d 125, 126 (1941). As noted above, MRTA's provisions provide reasonable time periods for claims to be asserted. Even for those who choose to wait, the Legislature has been gracious in allowing a thirty-year period in which to record a claim.

CONCLUSION
Our decision today is predicated upon the strong public policy concerns underlying the enactment of MRTA. The Legislature clearly stated the purpose of MRTA and the exclusivity of its exceptions by adopting section 712.10. It provides: "This law shall be liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record title as described in § 712.02 subject only to such limitations as appear in § 712.03." § 712.10, Fla. Stat. (1995).[11] While we also recognize the public policy concerns behind section 704.01, we conclude that it is important for the overall stability of property law under MRTA that claimants assert their interests in property in a reasonable and timely manner.[12] As we noted earlier, subject to some limited exceptions, MRTA has essentially shifted the burden to those claiming an interest in land to publicly assert these claims so that all interests in land will be a matter of public record. The circumstances of this case serve as a vivid illustration of the legislature's concerns in seeking to provide stability in property law while still providing a reasonable opportunity for the assertion of legitimate but unrecorded claims.
In the instant case, H & F's predecessor in title to the implied right now asserted could have recorded a notice of claim any time within the approximately fourteen years following the adoption of MRTA in 1963 until 1977, the end of the thirty-year period following the effective date of the root of the Airport District's title. Because H & F's predecessor failed to use or record its way of necessity or publicly assert it in any way, MRTA mandates the extinguishment of such an interest in property in favor of the record title owner of the property. Recognition of an implied but untimely asserted right of way over the record title holder's interest would undermine the clear purpose and effect of MRTA.
We therefore answer the certified question in the affirmative and approve the decision below.
It is so ordered.
*1177 HARDING, C.J., SHAW, WELLS and PARIENTE, JJ., and OVERTON, Senior Justice, concur.
NOTES
[1] H & F's land is located in Section 18, Township 3 South, Range 14 West, Bay County, Florida.
[2] Section 704.01(1) in relevant part provides:

Such an implied grant [an implied grant of a way of necessity] exists where a person has heretofore granted or hereafter grants lands to which there is no accessible right-of-way except over his land, or has heretofore retained or hereafter retains land which is inaccessible except over the land which he conveys.
Fla. Stat. (1995).
[3] In Larson v. Hammonasset Fishing Assn., Inc., No. CV XXXXXXXXXS, 1996 WL 156014, at *3 (Conn.Super.Ct. Mar.15, 1996), aff'd, 44 Conn.App. 908, 688 A.2d 373 (1997), the court addressed the issue in dicta, but provided no in-depth analysis. In Larson, the court held that no easement existed because the plaintiff had failed to show prior common ownership of the dominant and servient estates. Nevertheless, in dicta the court stated that the Marketable Record Title Act would have extinguished the plaintiff's right of way anyway because the plaintiffs and their predecessors had failed to file a notice pursuant to the provisions of the Act.
[4] The remaining five exceptions of MRTA clearly do not apply to the case at bar. Moreover, there is no claim that ways of necessity are expressly made the subject of a specific exception to MRTA.
[5] "Muniments of title" means the written evidence which a land owner can use to defend title to his estate. See Black's Law Dictionary 1019 (6th ed.1990).
[6] Section 712.01(2) defines "root of title" as the "title transaction purporting to create or transfer the estate claimed by any person and which is the last title transaction to have been recorded at least 30 years prior to the time when marketability is being determined."
[7] Obviously, the better practice in any land transaction is to expressly provide for all easements. Nevertheless, this case illustrates the difficulty in enforcing a way of necessity even if timely asserted and the difficulty of determining where it would be located and in establishing conditions on its use.
[8] The Court cited as an example of an inherent defect, a deed purporting to convey homestead property but only executed by a husband when the constitution required execution by both husband and wife. See Reid v. Bradshaw, 302 So.2d 180 (Fla. 1st DCA 1974).
[9] Moreover, as soon as a claimant makes a claim and begins to use the claimed way of necessity, the location becomes presumptively established. See Sapp v. General Dev. Corp., 472 So.2d 544 (Fla. 2d DCA 1985). However, as we noted earlier, no public claim by attempted use was established here. Moreover, in response to H & F's concern over the difficulty and impracticability of filing a common law way of necessity, we note that filing the notice in this case would have only affected one parcel of land. Section 19, because it has never been subdivided.
[10] Section 695.01 provides:

(1) No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; nor shall any such instrument made or executed by virtue of any power of attorney be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice unless the power of attorney be recorded before the accruing of the right of such creditor or subsequent purchaser.
(2) Grantees by quitclaim, heretofore or hereafter made, shall be deemed and held to be bona fide purchasers without notice within the meaning of the recording acts.
Fla. Stat. (1995).
[11] We recognize that section 704.08, Florida Statutes (1995), allows an easement for ingress and egress for the relatives and descendants of persons buried in a cemetery to visit the cemetery at reasonable times and in a reasonable manner. However, we conclude that this provision is not relevant to our analysis and we express no opinion on its interplay with MRTA.
[12] Of course, nothing in this opinion prevents H & F from seeking an easement from the Airport District to gain access to its property.